Baldwin, J.
The justice of this case is clearly against the plaintiff. He makes a conveyance, for a valuable consideration, of his interest in certain lands and choses in action, without any limitation upon his grantee’s power of alienation; lies by for a number of years, without asserting any claim to the property, and till after successive sales and conveyances thereof to bona fide purchasers; then, with full notice of the fact, obtains a reconveyance from his grantee, fraudulently made by him to defeat his own purchasers; and now seeks to recover back the subject, upon the allegation that the deed was intended merely as a mortgage. If the plaintiff is entitled to relief under such circumstances, it ought to be very clearly established.
The deed in question, if a mortgage, certainly departs very widely from the usual form of such instruments. It contains no unconditional covenant for repayment of the consideration, nor any acknowledgment of a subsisting indebtedness ; no covenant on the part of the grantee for a reconveyance, nor any condition upon which the estate is to be avoided ; no reservation, in any shape or form, of a power of redemption on the part of the grantor, nor of a right, for any period, to the possession and enjoyment of the property, which passed with the title to the grantee; while the authority of the latter to sell or otherwise dispose of the subject, ad libitum, is recognized by a necessary implication. In short the instrument, after a recital of the *173 grantor’s title and the sale of his interest to the grantee for the sum of 200 dollars, is in the common form of a deed of bargain and sale, except that it contains a guarantee of the value of the property conveyed, not absolute but contingent; the terms of the guarantee evidently contemplating a sale or sales of the subject by the grantee, without his being able to realize the price paid by him, with its interest; in which event only it is stipulated that the grantor shall make good the deficiency. But there is no obligation to sell imposed upon the grantee; and according to the terms of the contract, he was at liberty to retain the property itself, or the proceeds of sales, as his own, without accountability. This guarantee, however, rendered the contract unequal, inasmuch as it guarded the grantee, during the solvency of the grantor, against the hazard of loss, while it left him the chance of gain by an increase in the value of the property. A guarantee of value is unusual in sales of real estate, though not so in sales of personal dioses in action; in regard to which the law, in the absence of an agreement to the contrary, implies such a guarantee; and therefore if the purchaser of a bond is unable, by the use of due diligence, to make the money out of the obligor, he is entitled to reimbursement from the assignor, of the consideration paid, with its interest. This inequality in the contract did not render it the less a sale, if so intended by the parties, as its language imports. Under what circumstances, if any, an action of covenant would have lain upon the guarantee, or whether under any it would have been enforced by a court of equity, are matters foreign to the enquiry. It was not a stipulation for the benefit of the grantor, but for an additional advantage to the grantee ; and whether valid or invalid, could not affect his title as purchaser.
The cause, however, is not to be determined by the mere form of the contract, but by the intention of the *174 parties, to be gathered not only from the terms of the instrument, but also from extrinsic circumstances. pr0pr¡ety Qf resorting in such cases to evidence aliunde, results from the nature of the question; for otherwise a mortgage might be converted into a sale, or a sale into a mortgage, by fraud, accident, or mistake. But the present case is not embarrassed by the enquiry whether the transaction was intended as a mortgage -or as a conditional sale; an enquiry frequently of much perplexity and nicety; the difficulty arising out of the circumstance that both the one and the other are estates upon condition, and the condition of the like character in both, so far as its performance goes to defeat an estate granted, by repayment of the consideration ; and the essential distinction being, that in the event of nonperformance, the estate in the former case is forfeited at law but not in equity, and in the latter both at law and in equity. Here the question is not between a mortgage and a conditional sale, but between a mortgage and an absolute sale : for if the transaction was in fact a sale, there is no room for the idea, nor is it pretended, that it was upon any condition whatever. And on that question, it seems to me impossible to hold this instrument a mortgage upon its face, without maintaining that the harshness, or inequality, or (if you please) unlawfulness of a provision in a contract of sale, is to have the effect, not of rendering abortive the provision itself, or of avoiding the entire contract, but of changing it into another contract of a wholly different nature. How can we undertake to pronounce this deed a mortgage by its very terms, in the absence of any condition or provision to defeat the absolute title conveyed to the grantee ?
But though the deed is not a mortgage upon its face, the clause of guarantee may very properly be relied on, in connexion with other evidence, for the purpose of ascertaining what was the real character of the *175 transaction as contemplated by the parties; for upon that question of fact, we are to look to all the circumstances of the case; and it is an important consideration, which in a doubtful case might have a decisive influence, that the grantee is assured against the risk of loss, to the full amount of his principal money and interest. Upon such a question, authoritative rules can do little more than ascertain the abstract distinction between a sale and a mortgage: beyond that, they are guides rather to the investigation than the adjudication ; the fact of intent being a common sense deduction from all the evidence, by a sound discrimination of the weight of circumstances, and a just combination of the whole. Still the imperfection of human testimony requires us to bear in mind, that the intrinsic import and legal effect of the instrument itself are not to be lightly disregarded; that there is a prima facie presumption of its expressing truly the agreement of the parties; and that though it may be difficult, if not inexpedient, to prescribe the limits of extrinsic testimony, it ought to be of such a nature as to furnish some reason for the necessity of its introduction. This is usually found in the unskilfulness or carelessness of the scrivener; the ignorance of the parties; the misplaced and abused confidence of one of them ; the relation existing between, or the relative condition of, the parlies, subjecting one of them to the power or undue influence of the other; or, in a word, in whatever may be fairly referred to fraud, accident, or mistake. And when, upon the whole case, it appears that the conveyance was executed to secure a loan or a preexisting debt, objections arising out of the informality or imperfections of the instrument must be made to yield to the substantial merits of the cause; and so must even express stipulations tending to defeat, or restrain, or clog the equity of redemption, and thus give a collateral or additional advantage to the creditor, beyond his principal money and interest.
*176 When we examine the plaintiff’s bill, we find it stating broadly, that the deed was intended as a mortgage to secure a debt due from him to Harrison the grantee, with a power to the latter to make sales and conveyances of the property, to an extent sufficient to discharge the sum due. It makes no pretence that the instrument does not express truly the agreement of the parties. On the contrary, it treats the paper as a mortgage upon its face, so understood and acted upon by the parties; as evidence of which it alleges that the defendant Harrison, after making sales to the amount of the debt and charges, or nearly so, reconveyed the subject to the plaintiff. There is no complaint against Harrison in the bill, except that, before the reconveyance to the plaintiff, he sold and conveyed the property to the defendants John and James M’Ltire; of which sale and conveyance, the plaintiff falsely charges that he had no notice at the time of the reconveyance. And when we come to look into the proofs in the cause, we find nothing to warrant the belief that the contract between the parties was in any wise different from that evidenced by the deed. There is no proof that the consideration of the conveyance was a loan of money, or a preexisting debt; nor of an agreement to reconveyor surrender the property,or account for its value or the proceeds of sales, in any event whatever. The actual reconveyance, so far from interpreting the original contract favourably for the plaintiff, shews, under the circumstances, a combination between the parties to defraud the vendees of Harrison. It appears from the evidence to have been procured by the plaintiff under the delusive notion that it would enable him to claim such of the lands as lie in Broohe county, in the character of a purchaser from his own grantee, without legal (though with actual) notice of the previous sale to the M’Lures, the deed to them not having been recorded in that county. This, and his other conduct already noticed, are irreconcilable *177 with the idea of a consciousness on his part that he stood in the relation of mortgagor. The pretension that the consideration of the deed to Harrison has been reimbursed to him, otherwise than by his sale to' the M’Lures, seems to be wholly unfounded. Nor is any light thrown upon the question by the testimony on the part of the plaintiff, to prove the inadequacy of that consideration upon a contract of sale. It consists of the opinion of a single witness as to value, without reference to the period of the sale, or the stale of the title; and is of little weight compared with the prices at which that, and other interests in the common subject, were sold, first to the M’Lures, and afterwards by them to the defendant Gibson; which will be found, upon calculation, not to exceed per share the consideration received by the plaintiff. In fact, the value of the subject sold would seem to have been altogether uncertain and precarious; the title in its origin, according to the plaintiff’s own statement of it in his bill, appearing extremely objectionable, and the interests claimed under it, for the most part, if not altogether, in action instead of possession. In such a state of things, the value must have been merely speculative ; and a purchaser, though he may have been willing to risk the title by taking a deed with special warranty, might prudently require a guarantee that if he did not make, he should not lose any thing by his speculation, beyond the labour and expense of pursuing it unprofitably. And in point of fact it has turned out, that instead of gaining, he has lost by the contract.
But whatever may be the force of the circumstances aliunde, they cannot affect the subsequent purchasers without notice; and none is pretended by the bill, nor established by the proofs, beyond that furnished by the face of the instrument. Of this defence they, the only substantial defendants, (the plaintiff having declined an account against the defendant Harrison) have avail *178 ed themselves in due form of pleading; so that at last the cause must turn upon the intrinsic import and effeet of the deed in question.
If the clause of guarantee could be so construed as to give the plaintiff an equity of redemption, it would at the same time so modify that equity, as to defeat the plaintiff’s unjust demand against the Iona, fide purchasers, under the power of conversion acknowledged by himself to have been conferred by the instrument. Regarding the paper as a mortgage, there being no time limited for the payment of the debt, the grantor might redeem at anytime; but then, when he comes to redeem, he must exercise his right in a way adapted to the actual condition of the subject: if before a sale by the grantee, he is entitled to a reconveyance of the property; if after, to the proceeds in the hands of the grantee, subject to the payment of the debt; and the vendees are in no wise bound to see to the application of the purchase money. In truth, they are substantially purchasers from the mortgagor himself, through his duly constituted agent; and it would be a grievous iniquity, if the principal, after a sale under his lawful authority, could turn round and reclaim the property from the innocent purchasers.
It is contended, however, on the part of the plaintiff, that the power of sale vested in the grantee is void, under the authority of Chowning v. Cox &c. 1 Rand. 306. That case is a departure from the english doctrine, now well settled, (1 Lomax’s Dig. 322. Coote on Mortg. 128.) that a mortgagee may sell the property after forfeiture, under a power given for that purpose in the mortgage deed; a doctrine recognized in New Yorlc, and the practice there regulated by statute. 4 Kent’s Comm. 141. In Chowning v. Cox &c. it was decided, for reasons lucidly and cogently stated, that the mortgagee could not thus, by his own act, foreclose the equity of redemption. But that decision has no *179 application to the case before us. Here there was no forfeiture, and no foreclosure: no forfeiture, because the right of redemption was not limited in point of time; and no foreclosure, because the sale was not made to enforce a forfeiture. It was made by the mortgagee, not in that character,—not as a creditor coercing the payment of his debt, but as a trustee appointed to possess, control, manage, and dispose of the estate, with unlimited discretion, not merely for his own benefit, but for that of the grantor likewise. There are no considerations of justice or policy against the exercise of such a power, in which the grantor must be considered as giving his tacit concurrence; as much so as if he were present at the sale, and acquiescing therein ; which, according to Taylor's admr's &c. v. Chowning, 3 Leigh 654. (the supplement to Chowning v. Cox &c.) renders a sale by the mortgagee valid, though made by way of foreclosure. It would hardly be doubted, I presume, that a debtor may by power of attorney authorize a creditor to sell his land, receive the purchase money, retain the amount of the debt, and account for the residue ; and that a conveyance of the title and surrender of possession, for the better exercise of the power, would be unobjectionable. A trust is not incompatible with a mortgage security. A mortgagee in possession is a trustee, with authority to receive, and accountable for, the rents and profits. He may purchase the subject from the mortgagor, and, a fortiori, sell it by his permission to another. If the possession of the mortgagee is conferred by the contract, and no lime is limited for the payment of the debt, the security bears a considerable resemblance to the vivurn vadium of the common law, and also to the welsh mortgage; in both of which there is no forfeiture and no foreclosure ; and in the latter of which, if not in the former also, there may be a redemption at any time. Coote on Mortg. 9. 207. 517. In such a se *180 curity, there is no reason why the mortgagee may not be empowered, in addition to or in lieu of the profits, to apply the capital itself, from time to time, to the ex-tinguishment of the debt; and for that purpose to convert it from land into money.
Thus, whether the transaction is to be regarded as a sale or as a mortgage, the plaintiff is entitled to no relief against the derivative purchasers; and if entitled to any against his grantee alone, he has waived it by declining an account. In my opinion, therefore, the circuit court did right in dismissing the plaintiff’s bill.
Allen, J.
The principal question in this case will depend upon the construction of the deed of 1816. The extrinsic circumstances in evidence furnish but little aid in determining whether it is to be construed as a mortgage or an absolute sale. The deed is in the ordinary form of an absolute conveyance, conveying to the grantee the various interests described; and then comes the clause which gives rise to the difficulty. “It is agreed and understood by and between the said G. J. Floyd and C. L. Harrison, that in case the said Harrison or bis heirs or assigns shall not be able to make the aforesaid sum of 200 dollars out of the estate herein-before conveyed, that then the said Floyd shall refund the same to the said Harrison or his heirs or assigns, with lawful interest from this date till paid, or such part of the said 200 dollars as the said Harrison shall not be able to realize as aforesaid.” In the absence of all proof to the contrary, it seems to me that the terms here used import a loan of money, and nothing more. The consideration mentioned in the deed is to be refunded, with interest from the date of the agreement. It is clear that the parties did not contemplate any beneficial occupation of the premises by the grantee; for in that event the profits, it is to be presumed, would have equalled the interest. The parties contemplated *181 an immediate sale, and the application of the proceeds to the payment of the sum advanced ; and there was a personal covenant to refund the money with interest, or such part of it as might not be realized by the sale. Under this covenant, it seems to me there could be no doubt, that if Harrison had applied to a court of equity to foreclose the deed as a mortgage, and upon a sale of the property the amount had not been realized, he would have been entitled to a personal decree for the residue, the deed itself reciting and imbodying an express agreement to refund. The absence of a covenant to pay the money will not make it the less a mortgage, if it appears that the conveyance was originally intended as a security for the payment of money. 1 Powell on Mortg. 119 a. note (K), and the cases there cited. But where, as in this case, there is such a covenant contained in the conveyance, it is difficult to conceive how the instrument can be construed to be any thing more than a security. In the case of Howard v. Harris, 2 Chan. Cas. 147. the judge, in decreeing redemption, added, that he did so the rather because the defendant had a covenant for the repayment of his money, and therefore he had it in his power to have made it a mortgage at any lime. The same construction, it seems to me, must be given to this instrument.
The parties not contemplating a beneficial occupation of the premises, but a sale to raise the money, and the grantor having covenanted to repay with interest from the date, he could not have denied his liability for the debt. This distinguishes the case from Conway's ex'ors v. Alexander, 7 Cranch 218. In that case there was no covenant to repay, nor any evidence of a loan ; and the chief justice observed, that an action at law could not have been maintained for the recovery of the money, and if, to a bill praying a sale, and a decree for so much as might remain due, the grantor had answered that this was a sale and not a mortgage, clear proof must *182 have been produced to justify a decree against him. If the grantee, then, could have treated this as a raortgage, the rule that a mortgage cannot be a mortgage on one side only, but must be mutual, applies, and govérns the case. And this rule operates, though the rights of the parties may be in other respects different: as in the case cited in Talbot v. Braddyl, 1 Vern. 395.—if A., lend upon a mortgage, with a proviso to redeem on payment of a certain sum at the end of two years, there one side cannot foreclose till the end of the two years, but the mortgagor may come before and redeem. And so e converso, though the grantee here could not proceed on the personal covenant until after a sale, the grantor could at any time redeem before a sale, upon paying the amount secured. The contract, viewed as an absolute sale, would be most unequal and oppressive. Under that construction, the grantee could either retain the property and reap the profits without account, or, whenever he thought proper, proceed to sell. He was sure of his advance with interest, under any circumstances, and entitled to all he might make in addition. And the grantor, in the mean time, could take no step to relieve himself. If the property were depreciating, he could neither redeem it nor enforce a sale. For whenever it is conceded that he had a right to relieve himself from this contingent liability by requiring a sale, the deed loses its character of an absolute sale, and can only be viewed as a security. If the conveyance in its inception was a mortgage, the absence of a provision for redemption cannot affect it. Where it is doubtful whether an absolute or conditional sale, or a mortgage, was intended, the want of such a provision is a circumstance entitled to proper consideration. But where the instrument was intended as a security, the absence of a provision to redeem, or express stipulations to prevent it, will not change its character. 1 Powell on Mortg. 119 a.
*183 If the deed in its inception was a mortgage, the power to sell, according to Chowning v. Cox &c. 1 Rand. 306. is invalid, and the right of redemption is not barred as against the defendants, purchasers with notice; for the deeds under which they held disclosed the right of the original grantor. The doctrine in Chowning v. Cox &c. may be inconvenient, and an unnecessary interference with the rights of adult parties. But the case has been recognized since as law, and very recently in Breckenridge v. Auld & others, 1 Rob. 148. I am not disposed, when we have but a bare court, to disturb it. The distinction taken between this case and that, seems to me to be unsubstantial. Whether the sale be made to enforce the forfeiture after the day of payment is passed, or to raise the money in pursuance of a power conferred in the instrument, it equally militates against the principle which lies at the foundation of the rule,—the power of the creditor over his debtor, and the incompatibility of a due exercise of the powers and duties of a trustee, with the relation of creditor.
I think, therefore, that the decree is erroneous and should be reversed.